

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-75,611

### EX PARTE BRIAN KEITH KINNETT, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM WICHITA COUNTY

**HOLCOMB, J.,** *filed a concurring opinion, in which* **WOMACK, J.,** *joined.*

### O P I N I O N

I note at the outset that I stand by my position in *Wright v. State*, 201 S.W.3d 765, 770 (Tex.

Crim. App. 2006) (Holcomb, J., dissenting). In my view, the Legislature's wording of the statute

in question, Texas Health and Safety Code, Section 481.002(49), is overly broad when it defines an

"adulterant or dilutant" as "*any* material that increases the bulk or quantity of a controlled substance,

*regardless of its effect* on the chemical activity of the controlled substance." (Emphasis added.) But

I believe that the Court has reached the correct result in this case primarily because the "adulterant"

or "dilutant" in question was water.

There was apparently no evidence at trial that applicant flushed the commode after pouring his liquid methamphetamine in it, even though he had time to do so. Indeed, the habeas court specifically found that the commode had not been flushed. Moreover, that court also noted that there was nothing in the record to suggest that the toilet was not functioning. According to the experts' affidavits in the habeas record, it is common for methamphetamine "cooks" to keep the left-over materials ("bones") from methamphetamine production. This "bones" material is retained for further processing to extract more methamphetamine later. According to one of the experts' affidavits, "[i]t is possible to extract methamphetamine from 'bones' material, if the 'bones' still contain methamphetamine, *if* such material has been introduced into a quantity of *water*." Chandley Affidavit, Habeas Record at 10 (emphasis added). Thus, unlike the extraneous liquids in question in *Seals v. State*, 187 S.W.3d 417 (Tex. Crim. App. 2005) (blood), and *Wright* (unusable toxic liquids), water appears to be correctly characterized as an adulterant or dilutant in the present case because it seems to play a critical role in the preservation, and later extraction, of methamphetamine from the "bones" material. Based on all this evidence produced at trial and at the evidentiary hearing, I can see how the habeas court could have concluded that applicant had poured the methamphetamine in the commode with the intention of later retrieving the mixture and extracting any residue of methamphetamine from the water, no matter how ridiculous this may seem to someone not versed in the drug trade.

In addition to above, I note that applicant has presented several examples to show the absurdity of the statute in question. *See Ante*, slip op. at 3 n.2. All of those examples are hypothetical and none comes even close to describing this applicant's case. It is therefore important to note that this Court has declined to comment in any way on the merit of those hypothetical cases,

if one should materialize before us someday.

Finally, I note that applicant incorrectly argues that "[t]he enhanced punishment to which he was sentenced bears no reasonable relationship to the crime he committed," Applicant's Brief at 14-15, suggesting that he had been sentenced to 85 years' imprisonment and a fine of $250,000 solely for his conviction for possession of more than 400 grams of a controlled substance, which included the weight of the actual methamphetamine and the toilet water. As the State points out, however, it had presented evidence, during the punishment phase, showing that applicant was already on felony probation for aggravated assault at the time of the present offense. The evidence also showed that, only six days before the present offense, applicant had been stopped and arrested, caught with 56 grams of usable methamphetamine, a large wad of cash, a number of empty little bags typically used to distribute drugs, and digital scales typically used to weigh drugs. Thus, it was no doubt due to the introduction of such evidence, and not simply because of the offense charged in the present case, that the jury assessed the enhanced punishment.

For all the foregoing reasons, I concur.


FILED: FEBRUARY 13, 2008.

DO NOT PUBLISH